# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT KREB, | Case No.: 3:16-cv-00444-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **JACKSON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Docket No. 46) |
| LIFE FLIGHT NETWORK, LLC, an Oregon Corporation, JACKSONS FOOD STORES, INC., a Nevada Corporation, JACKSON JET CENTER, LLC, an Idaho Corporation, and CONYAN AVIATION, INC., d/b/a Jackson Jet Center, an Idaho Corporation, | **PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** (Docket No. 62) |
| Defendants. | |

Now pending before the Court are (1) the Jackson Defendants' Motion for Summary Judgment (Docket No. 46), and (2) Plaintiff's Motion for Leave to File First Amended Complaint (Docket No. 62). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.    GENERAL BACKGROUND

This case arises from Plaintiff Robert Kreb's "joint" employment by Defendants Jacksons Food Stores, Inc. ("Jacksons"), Jackson Jet Center, LLC and Conyan Aviation, Inc., d/b/a Jackson Jet Center ("JJC"), and Life Flight Network, LLC ("LFN") (collectively referred to as "Defendants"). *See* Compl., ¶ 2.16 (Docket No. 1, Att. 1). According to Plaintiff, Defendants hired him on or about February 24, 2014 "to fly fixed wing emergency medical response planes for the emergency medical transport services offered by Defendants." *Id.* at ¶¶ 4.24, 2.3. While Plaintiff worked for Defendants, he lived in Washington and was "placed in Lewiston, Idaho as

his principal base of operations." *Id*. at ¶ 2.5. During this time, Plaintiff "would commute from his home in Friday Harbor[, Washington] each week to start a seven-day schedule for LFN." *Id*. at ¶ 4.20. Although Plaintiff flew LFN patients in various parts of the Pacific Northwest, he contends that he "reported to the Lewiston, Idaho base to perform" those flights. *Id*. at ¶ 2.9. While employed, Plaintiff raised many complaints with Defendants about their alleged failure to pay him wages and other compensation he says he was promised. *See id*. at ¶¶ 4.23, 4.27-4.45.

Defendants fired Plaintiff on July 10, 2014, one day after he allegedly raised safety concerns about a flight Defendants had scheduled him to pilot. *See id*. at ¶¶ 4.46-4.53. Following his termination, Plaintiff alleges that Defendants "blacklisted" him from employment opportunities, and that he has since moved to New Mexico with his family because he could not obtain employment in the Pacific Northwest. *See id*. at ¶¶ 4.58-4.59, 4.61.

On May 11, 2016, Plaintiff filed a Complaint against Defendants in the Superior Court of the State of Washington in King County, Washington. In that complaint, he alleged that Defendants owe him unpaid wages and other compensation (first cause of action), wrongfully discharged him in violation of public policy (second cause of action), and breached their employment contract with him (third cause of action). *See id*. at ¶¶ 1.1, 5.1-7.3. Among other damages and costs, Plaintiff seeks unpaid wages, lost future wages, punitive damages, exemplary damages, and emotional distress damages. *See id*. at ¶¶ 8.1-8.11.

On June 6, 2016, Defendants removed the Washington state court case to federal court in the Western District of Washington, based on diversity jurisdiction. *See* Not. of Removal (Docket No. 1). Then, on July 21, 2016, Defendants moved for a change of venue to the District of Idaho under 28 U.S.C. § 1404. *See* Mot. to Change Venue (Docket No. 19). On September 14, 2016, United States District Judge James L. Robart granted that Defendants' motion, transferring venue to this Court:

On balance, the Court finds Defendants have met their burden of demonstrating that transfer is appropriate. Of the nine factors, four weigh in favor of transfer, five are neutral, and none weigh against transfer. Most importantly, most of the parties, the case-related contacts, the relevant witnesses, and other evidence are located in Idaho. For these reasons, Defendants have made "a strong showing of inconvenience" to support a transfer of venue. Accordingly, the court concludes that transfer to the District of Idaho pursuant to 28 U.S.C. § 1404 is warranted.

9/14/16 Order, p. 15 (Docket No. 37) (internal citations omitted).

Jacksons and JJC (collectively the Jackson Defendants) now move for summary judgment on all of Plaintiff's claims against them. *See generally* MSJ (Docket No. 46).[1] They argue that under a conflict of laws analysis, Idaho law applies to preclude each of Plaintiff's claims against them. *See id.*, p. 3 ("Under Idaho law, Kreb's claims for unpaid wages are barred by the statute of limitations, his claim for wrongful termination is barred by his election of an administrative remedy, and his claim for breach of contract is barred by the statute of limitations."). Plaintiff disputes that a conflict of laws analysis favors Idaho law over Washington law, but argues that most of his claims survive under Idaho law regardless. *See generally* Opp. to MSJ (Docket No. 6). Relatedly, Plaintiff also moves for leave to amend his Complaint to add a cause of action under the Fair Labor Standards Act ("FLSA") for retaliation. *See* Mot. to Am. (Docket No. 62).

## II.     DISCUSSION

### A.     The Jackson Defendants' Motion for Summary Judgment (Docket No. 46)

#### 1.     Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] On July 25, 2017, the parties stipulated to LFN's dismissal from this action and, on August 1, 2017, the Court entered an Order to that effect. *See* Stip. (Docket No. 71); 8/1/17 Order (Docket No. 72). LFN's dismissal has no effect on Plaintiff's claims against the Jackson Defendants or, likewise, the Jackson Defendants' defenses to Plaintiff's claims against them. *See id.* The "Jackson Defendants" and "Defendants" are used interchangeably here.

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1)(A) & (B); *Ransier v. United States*, 2014 WL 5305852, *2 (D. Idaho 2014).

Rule 56(e)(3) authorizes summary judgment for the moving party "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

2.     <u>Washington v. Idaho:  Conflict of Laws Analysis</u>

The United States Supreme Court has held that, when a change of venue occurs pursuant to 28 U.S.C. § 1404(a), "[t]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376

U.S. 612, 639 (1964). In a diversity case, the federal court must apply the conflict of laws principles of the forum state. *See Sarlot-Kantarjian v. First Pennsylvania Mort. Trust*, 599 F.2d 915, 917 (9th Cir. 1979). Therefore, there is no dispute that Washington's conflict of laws rules apply to determine whether Washington or Idaho law should govern the instant action. *See S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981); *compare also* Mem. in Supp. of MSJ, p. 5 (Docket No. 46, Att. 2), *with* Opp. to MSJ, p. 2 (Docket No. 60).

        *a.*    *An Actual Conflict Exists*

However, before a conflict of laws inquiry takes place, Washington law presupposes an actual conflict between the laws of Washington and Idaho. *See Burnside v. Simpson Paper Co.*, 864 P.2d 937, 941-42 (Wash. 1994). When the result of the issues is different under the law of the two states, there is a "real" conflict. *See Weizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997). Here, a comparison of Washington's and Idaho's statutory laws' application to Plaintiff's claim for unpaid wages reveals a clear conflict in need of resolution via a conflict of laws analysis.

Plaintiff alleges that Defendants, under Washington law, (1) "willfully violated RCW 49.52.050 and RCW 49.52.070 by failing to pay [his] promised wage for all time engaged in work," and (2) "willfully violated RCW 49.46.130(1) by not paying an overtime rate of at least one and one-half times his regular rate of pay for all hours in excess of forty in a seven-day workweek." Compl., ¶¶ 5.2-5.3 (Docket No. 1, Att. 1). Relevant here, RCW 49.52.050(2) penalizes employers "who . . . willfully and with intent to deprive [an] employee of any part of his or her wages, . . . pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract"; RCW 49.52.070 creates civil liability for any employer who violates RCW 49.52.050(2) and provides that the wronged employee may be entitled to "twice the amount of wages unlawfully rebated or withheld"; and,

with few exceptions, RCW 49.46.130(1) requires all employers to pay their employees overtime for hours worked over forty in a work.

Defendants contend that these provisions of Washington law clash with Idaho's wage laws. *See* Mem. in Supp. of MSJ, p. 6 (Docket No. 46, Att. 2). For example, Idaho Code § 45-608 provides that employers must pay "all wages due to their employees at least once during each calendar month, on regular paydays designated in advance by the employer" – unlike RCW 49.052.050, there is no requirement under Idaho law that an employer act "willfully and with the intent" to withhold pay. *See id*. Moreover, Idaho Code § 45-615(2) provides for the recovery of treble damages in a successful wage claim, whereas RCW 49.52.050(2) permits double damages. *See id*.[2] And, finally, unlike RCW 49.46.130(1), Idaho has no statute requiring the payment of overtime wages specifically. *See id*. According to Defendants, these instances reveal "clear conflicts between the Idaho statutes on the wage and overtime claims and the Washington statutes governing those issues." *Id*.

It is unclear whether the subjective component inherent within RCW 49.052.050 offers a difference without much of a distinction when compared to Idaho Code § 45-608. In other words, as Plaintiff argues, it may well be that Defendants owe him wages under either Washington or Idaho law because Defendants have not alleged that their failure to pay him his promised wages was somehow a mistake or inadvertent (and, thus, not otherwise willful or intentional). *See* Opp. to MSJ, p. 5 (Docket No. 60). As such, there can be no underlying conflict that then sets in motion Washington's conflict of laws analysis. *See Woodward v.*

---

[2] In these two respects, the anomaly in Defendants' arguments does not go unnoticed. That is, though arguing for the application of Idaho law for the purposes of their Motion for Summary Judgment (in particular, Idaho's applicable statutes of limitation (*see infra*)), there is no question that, as between Washington law and Idaho law, Washington law is more favorable to a defendant employer – at least insofar as the referenced statutes are concerned. Nothing prevents Defendants' position in this regard, but it is worth keeping in mind.

*Taylor*, 366 P.3d 432, 435 (Wash. 2016) ("If there is no actual conflict, the local law of the forum applies and the court does not reach the most significant relationship step."). The extent to which this same logic extends to Defendants' alleged failure to pay Plaintiff overtime wages is likewise unclear, given that there is no Idaho statute requiring the payment of such wages, notwithstanding a possible contract requiring the same – rhetorically speaking, how does this reality speak to an employer's subjective intent surrounding its failure to make such payments, if at all?

The question is abstract at present and not answered here. Still, the fact remains that the legal mechanism for recovering overtime wages in Washington and Idaho is different. In Idaho, an aggrieved employee must first prove the existence of an agreement for payment of overtime wages before recovering such wages pursuant to that agreement. In comparison, Washington allows an aggrieved employee to recover overtime wages via statute alone, independent of any agreement. Said another way, if Washington law were to apply to this case, the Defendants could be liable for payment of overtime wages without Plaintiff having to first prove the existence of any agreement (as is needed under Idaho law) for payment of such wages. Without attempting to conclude as a matter of law that the outcome is the same under either law's application,[3] this difference – saying nothing of the discrepancy in the amount of recoverable

---

[3] On this point, the Court notes that Plaintiff claims that, during his recruitment, he was assured that he would receive overtime compensation. *See* Compl., ¶ 4.11 (Docket No. 1, Att. 1) ("Mr. Swakon, Mr. Fergie, and Nicole Barnard-Croft all assured Mr. Kreb that pilots who fly for LFN receive overtime compensation and all LFN fringe benefits."); *see also* Kreb Decl., ¶ 15 (Docket No. 32) ("Mr. Swakon, Mr. Fergie, and Ms. Barnard-Croft all assured me that pilots who fly for LFN receive overtime compensation and all LFN fringe benefits. These promises were stated in the initial screening interview with her office and in a subsequent telephone interview with Mr. Swakon, Mr. Fergie, and Mr. Miles. These promises were repeated to me throughout my employment in other telephone conversations in the course of conducting LFN operations."). Defendants deny these allegations. *See* Jackson Defs.' Ans., ¶ 31 (Docket No. 24) (denying allegation that overtime would be calculated and paid through JJC payroll); LFN's Ans., ¶ 4.11 (Docket No. 25) (as to ¶ 4.11: "Denies").

damages – is significant and amounts to an actual conflict between the laws of Washington and Idaho.

                b.      *Under Washington's Conflict of Laws Analysis, Idaho Law Applies*

Where there is an actual conflict, the parties agree that Washington has adopted the "most significant relationship" test for both contract and tort claims to determine which state's law to apply. *See Mulcahy v. Farmers Ins. Co.*, 95 P.3d 313, 317 (Wash. 2004); *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash. 1994); *compare also* Mem. in Supp. of MSJ, p. 6 (Docket No. 46, Att. 2), *with* Opp. to MSJ, p. 7 (Docket No. 60). Here, in addition to the statutory claims, Plaintiff also raises wrongful discharge and breach of contract claims. *See* Compl., ¶¶ 5.1-7.3 (Docket No. 1, Att. 1); *see also* Opp. to MSJ, p. 7, n.4 (Docket No. 60).

For contract claims, the "most significant relationship" test looks at the place of contracting, the place of negotiation, the place of performance, and the residence of the parties. *See Mulcahy*, 95 P.3d at 317 (citing Restatement (Second) of Conflict of Laws § 188). For tort claims, the test has a two-step analysis focusing, first, on the place where the tortious conduct occurred, the place where the injury occurred, the residence of the parties, and the place in which the parties' relationship is centered; and, second (if the contacts are evenly balanced), considering "the interests and public policies of potentially concerned" jurisdictions. *See Rice*, 875 P.2d at 1217 (citing Restatement (Second) of Conflict of Laws § 145); *see also Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1001 (Wash. 1976). In both instances, the "approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found." *Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 480 (Wash. 1984) (citing *Johnson*, 555 P.2d at 1000).

The Court summarizes here the various circumstances which combine to reflect the significant contacts of this case with the states of Washington and Idaho. They are:

| WASHINGTON | IDAHO | NEUTRAL |
|---|---|---|
|  |  |  |
| Plaintiff lived in Friday Harbor, Washington when he applied to work with (and was recruited by) Defendants. *See* Compl., ¶ 2.1 (Docket No. 1, Att. 1). | On December 4, 2013, Plaintiff attended an in-person interview with LFN personnel in Boise, Idaho at the JJC headquarters. Plaintiff alleges that certain promises were made to him regarding compensation during this interview. *See* Compl., ¶¶ 4.6-4.12 (Docket No. 1, Att. 1). | Plaintiff submitted his application for hire electronically to LFN. *See* Compl., ¶ 4.2 (Docket No. 1, Att. 1). |
| Jacksons directed Plaintiff to conduct his new employee induction at the Jacksons New Employee Processing/Training center in Tukwila, Washington. *See* Compl., ¶ 2.14 (Docket No. 1, Att. 1). | LFN contracted with JJC to co-employ Plaintiff to perform emergency medical service ("EMS") transport under the LFN banner. JJC is incorporated in the state of Idaho. JJC is part of the Jackson Company holdings, a conglomerate of Idaho corporations. Jacksons is a privately held for-profit corporation incorporated in the state of Nevada and based in Meridian, Idaho. Jacksons is the sole member and owner of JJC. *See* Compl., ¶¶ 2.8-2.9, 2.11-2.12 (Docket No. 1, Att. 1). | LFN is a not-for-profit corporation based in Oregon with a service network across the Pacific Northwest. *See* Compl., ¶ 2.4 (Docket No. 1, Att. 1). |
| Plaintiff commuted from his home in Friday Harbor, Washington to Lewiston, Idaho each week to start a seven-day schedule for LFN. Plaintiff was assigned to a work schedule wherein he worked seven days on, seven days off. During the seven days off from work, Plaintiff lived in Washington; during the seven days working, Plaintiff lived in Lewiston, Idaho. *See* Compl., ¶¶ 4.20, 4.25 (Docket No. 1, Att. 1). | Plaintiff was told that he would be employed by JJC and paid through JJC's payroll system, but that he would fly LFN-owned planes, wear an LFN uniform, follow LFN protocol, and would be expected to follow LFN flight directives, including safety protocols. *See* Compl., ¶¶ 4.7-4.9, 4.12 (Docket No. 1, Att. 1). | Plaintiff initially interviewed with LFN and JJC personnel by telephone on November 19, 2013. *See* Compl., ¶ 4.5 (Docket No. 1, Att. 1). Subsequent phone calls also took place during the application/recruitment process. *See* Kreb Decl., ¶ 15 (Docket No. 32). |

| | | |
|---|---|---|
| Plaintiff applied for unemployment benefits in Washington. *See* Compl., ¶ 4.55 (Docket No. 1, Att. 1). | JJC/LFN recruited/hired Plaintiff in December 2013 and placed him in Lewiston, Idaho as his principal base of operations. Plaintiff reported to the base to perform LFN's EMS flights throughout the Pacific Northwest under JJC's certificate. *See* Compl., ¶¶ 2.5, 2.9, 4.20 (Docket No. 1, Att. 1). | Plaintiff was told that LFN would cut a check for any benefits coverage differences and differences in deductibles not covered by the JJC insurer. *See* Compl., ¶ 4.12 (Docket No. 1, Att. 1). |
| On October 7, 2014, Plaintiff filed a whistleblower complaint with the federal Occupational Safety and Health Administration, Region X, located in Seattle Washington. *See* Kreb Decl., ¶ 32 (Docket No. 32). | Jacksons issued Plaintiff's paychecks and performed other human resources and management functions during Plaintiff's employ with Defendants. *See* Compl., ¶ 2.13 (Docket No. 1, Att. 1). | Plaintiff flew for Defendants throughout the states of Washington, Idaho, and Oregon. *See* Compl., ¶¶ 2.3, 2.10, 2.16 (Docket No. 1, Att. 1). |
| | Plaintiff's payroll documents show that Idaho was listed as his primary state for tax purposes and that Idaho state taxes were withheld from his paycheck. *See* Ex. B to Phillips Decl. (Docket No. 46, Att. 3). | Plaintiff now resides in New Mexico. *See* Compl., ¶ 2.2 (Docket No. 1, Att. 1). |
| | During the seven days on duty, Plaintiff lived in Lewiston, Idaho and reported to the Lewiston, Idaho base for his shifts. *See* Compl., ¶¶ 4.20, 4.25 (Docket No. 1, Att. 1); *see also* Kreb Decl., pp. 2-9, attached as Ex. A to Phillips Decl. (Docket No. 46, Att. 3). | |
| | When Plaintiff's duties required flying out of Lewiston, Idaho to other locations, he returned to the Lewiston, Idaho base after such flights. *See* Kreb Decl., pp. 2-9, attached as Ex. A to Phillips Decl. (Docket No. 46, Att. 3). | |

From this, the Court concludes that Idaho has the most significant relationship to the balance of these contacts. Washington was arguably the place of contracting when understanding that Plaintiff's acceptance of any employment opportunity with Defendants presumably occurred in the state where he lived at that time (Washington). *See* Restatement (Second) of Conflict of Laws § 188, cmt. e (place of contracting is place where last act necessary to give contract binding effect). The most significant negotiations, however, took place in Boise, Idaho where Plaintiff alleges that promises regarding his compensation were made during his only in-person interview. Further, Plaintiff was employed in Idaho, with his principal base of operations located in Lewiston, Idaho. Although his flights went through various areas of the Pacific Northwest, the flights originated from and returned to Lewiston, Idaho, and the events Plaintiffs relies upon in raising his claims took place mostly in Idaho. Further, while Plaintiff may have originally lived in Washington, he later resided in Idaho 50% of the time while employed by Defendants and 100% of the time while actually on duty working for Defendants.

Finally, no party currently resides in Washington for these purposes – Plaintiff now lives in New Mexico, Jacksons is based in Idaho and Nevada, JJC is based in Idaho, and LFN (now dismissed from the case) is based in Oregon. Again, Washington law looks to the *most significant* relationship, not *any* relationship. Here, compared to Idaho, Washington's relationship to the events giving rise to this action is either not particularly significant, or is neutral when considering the totality of circumstances. Under no assessment of the facts can it be said that Washington's relationship to these events is *more significant* than Idaho's.

Even if the foregoing contacts were more evenly balanced across Washington and Idaho, the Court still would apply Idaho law because of its more pronounced interests in the litigation. The Jackson Defendants' contacts are to Idaho. Similarly, the Plaintiff contracted for and performed services for LFN primarily in Idaho and, relatedly, was fired in Idaho in relation to

those services.  In contrast, Washington's only connection to this action is Plaintiff's previous residence there.  Even if Washington has a "long and proud history of being a pioneer in the protection of employee rights," the fact of any such history does not trump a balancing of the pertinent interests of the two states.  *See Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000).  Otherwise, Washington law would *always* apply and an employer's interests and another state's (Idaho's) interests would be disregarded out of hand.  Idaho has the more superior interest in enforcing claims originating in Idaho against resident corporations; Washington cannot lay claim to those same realities.  "When one of two states related to a case has a legitimate interest in the application of its law and the other state has no such interest, clearly the interested state's law should apply."  *Johnson*, 555 P.2d at 1002.

      3.    <u>Plaintiff's Claims Under Idaho Law</u>

      a.    *Plaintiff's Wage Claim (First Cause of Action)*

Plaintiff's wage claim[4] is premised upon Defendants' alleged failure to fully compensate him for "all time engaged in work," including overtime, in a particular pay period.  Compl., ¶¶ 5.2-5.3 (Docket No. 1, Att. 1).   To be clear, Plaintiff does not allege he was never paid; rather, he argues that he was not paid *as much* as he was entitled, owing to discrepancies in overtime pay, fringe benefits, differences in insurance deductibles, flight differential pay (higher rates for certain flights), per diems, and time logged before/after shifts.  *See id*. at ¶¶ 4.11-4.13, 4.30, 4.35-4.36.  Whatever their form, Defendants argue that such claims are barred under Idaho Code § 45-614, which provides:

> 45-614.  COLLECTION OF WAGES – LIMITATIONS.  Any person shall have the right to collect wages, penalties and liquidated damages provided by law or pursuant to a contract of employment, but any action thereon shall be filed wither

---

[4] "'Wage claim' means an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, penalties, or damages provided by law to employees with a claim for unpaid wages."  I.C. § 45-601(6).

with the department or commenced in a court of competent jurisdiction within two (2) years after the cause of action accrued, provided, *however, that in the event salary or wages have been paid to any employee and such employee claims additional salary, wages, penalties or liquidated damages, because of work done or services performed during his employment for the pay period covered by said payment, any action therefor shall be commenced within six (6) months from the accrual of the cause of action.* It is further provided that if any such cause of action has accrued prior to the effective date of this act, and is not barred by existing law, action thereon may be commenced within six (6) months from the effective date of this act. *In the event an action is not commenced as herein provided, any remedy on the cause of action shall be forever barred.*

I.C. § 45-614 (emphasis added). The Court generally agrees.

Plaintiff's Complaint is plain that he is by-and-large (*see infra*) seeking the recovery of "additional" wages[5] – he is not alleging a right to collect wages in the first instance. Such a claim implicates Idaho Code § 45-614's six-month statute of limitations. Because Plaintiff filed his Complaint nearly two years after he was terminated, any claims for such additional wages are "forever barred." *See id.* In this respect, Defendants' Motion for Summary Judgment is granted, except as to Plaintiff's claim for payment related to his insurance benefits.[6]

      b.     *Plaintiff's Wrongful Discharge Claim (Second Cause of Action)*

The right to discharge an at-will employee is limited by considerations of public policy, such as when the motivation for the firing contravenes public policy. *See Mallonee v. State*, 84 P.3d 551, 621 (Idaho 2004); *see also Watson v. Idaho Falls Consol. Hosp., Inc.*, 720 P.2d 632,

---

[5] "'Wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece or commission basis." I.C. § 45-601(7).

[6] Assuming Idaho law applies, Plaintiff does not dispute Idaho Code § 45-614's impact on his ("non-overtime") wage claim, except to say that its "longer two-year period applies to his claim for payment related to his insurance benefits." Opp. to MSJ, p. 19, n.9 (Docket No. 60) (citing *Latham v. Haney Seed Co.*, 807 P.2d 630, 632 (Idaho 1991) (retirement benefits "were earned over the entire course of the employment relationship and were not attributed to nor earned in a specific pay period") (citing *Johnson v. Allied Stores Corp.*, 679 P.2d 640, 644 (Idaho 1984) (same as to severance pay))). Defendants do not weigh in on this discrete issue and, on this record (assuming the existence of an insurance benefits-related wage claim), the Court agrees. Therefore, in this respect, Defendants' Motion for Summary Judgment is denied.

637 (Idaho 1986) ("[An] employee may claim damages for wrongful discharge when the motivation for discharge contravenes public policy."). The circumstances of what constitutes public policy sufficient to protect an at-will employee from termination is a question of law. *See id*. One such public policy exception protects employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights and privileges. *See id*. It follows, of course, that an employer may not discharge an at-will employee without cause when the discharge would violate public policy. *See id*. Once the court defines the public policy, the question of whether the public policy was violated is one for the jury. *See Smith v. Mitton*, 104 P.3d 367, 374 (Idaho 2004).

Here, Plaintiff alleges that he was wrongfully terminated: (1) for reporting safety concerns; and (2) for protesting changes in wages and working conditions. *See* Compl., ¶¶ 6.1-6.2 (Docket No. 1, Att. 1). Through their Motion for Summary Judgment, Defendants argue that neither instance supports recovery upon a recoverable wrongful termination claim. *See* Mem. in Supp. of MSJ, pp. 13-20 (Docket No. 46, Att. 2). These arguments are considered below.

### i. Safety Concerns

Plaintiff generally claims that he "raised safety concerns to his employers and Defendants fired him the next day," elaborating further that he "sought to protect himself, passengers, patients, staff and bystanders by pointing out the safety risks he perceived, consistent with his training with LFN." Compl., ¶ 6.1 (Docket No. 1, Att. 1). Defendants respond, correctly, that nowhere within this claim does Plaintiff allege he was terminated for reporting a violation (or suspected violation) of any law by Defendants, or that he was terminated for refusing to perform an illegal act. Indeed, Plaintiff avers that he "stood ready to complete the flight, despite safety concerns," and these particular facts cannot support a claim that Defendants were ordering him to perform an unlawful act by assigning him the flight in question. *Id*. at ¶ 4.48.

Plaintiff further alleges that "LFN safety protocol demanded that he inform his supervisors of any elevated risks and to consider mitigation methods to reduce risks posed by any flight assignment." *Id.* As alleged, and as the record indicates, this was an internal company policy; it was not a requirement of any state or federal law. Thus, this claim also has no basis for establishing that his conduct in this respect falls within a public policy exception to the at-will doctrine under Idaho law. *See, e.g., Lord v. Swire Pacific Holdings, Inc.*, 203 F. Supp. 2d 1175, 1180 (D. Idaho 2002) (rejecting plaintiff's argument that "the retaliatory motivation behind the discharge contravenes public policy" because "this type of alleged wrong does not fit within the definition of public policy under current Idaho cases," reasoning further: "In the absence of case law or statutory language . . ., the Court finds no basis for expanding the Idaho law that defines the public policy exception to the at-will doctrine."). Without more, the actions (or inactions) for which Plaintiff seeks protection did not constitute a refusal to commit an unlawful act, a performance of an important public obligation, or an exercise of a legal right or privilege.

Either alternatively or to buttress his claim, Plaintiff points to a federal act known as the "Wendell H. Ford Aviation Investment and Reform Act for the 21st Century" ("AIR-21"). *See* 49 U.S.C. § 42121. Under AIR-21, it is a violation of federal law to discharge or discriminate against an employee who reports a violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration. *See* 49 U.S.C. § 42121(a)(1). And, AIR-21 has the outward appearance of the sort of public policy that could possibly support a wrongful termination claim. *See* Opp. to MSJ, p. 12 (Docket No. 60) (citing *Gardner v. Loomis Armored, Inc.*, 913 P.2d 377, 379-80 (Wash. 1996); *Wilson v. City of Monroe*, 943 P.2d 1134, 1140 (Wash. Ct. App. 1997)). Even so, summary judgment is proper, for the following reasons.

To begin, and relevant here, "[a] person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of [AIR-21] may . . . file . . . a

complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C.

§ 42121(b)(1). Filing a complaint is not mandatory; it merely affords "an additional remedy for

plaintiffs seeking to advance a retaliatory discharge claim." *Branche v. Airtran Airways, Inc.*,

342 F.2d 1248, 1264 (11th Cir. 2003). But, once the administrative complaint process is initiated,

a complainant's ability to *also* pursue a claim in a court of law ends. *See, e.g.*, *Fadaie v. Alaska*

*Airlines, Inc.*, 293 F. Supp. 1210, 1220 (W.D. Wash. 2003) ("Mr. Fadaie could have elected to

forego his administrative options and file his whistleblower claims directly in a court of law.

*However, this choice of remedies ended once plaintiff initiated the administrative complaint*

*process and obtained a final decision from the Secretary of Labor. At that point, the statute*

*obligated him to complete the administrative process, such that the only avenues of relief*

*available to him were a hearing before the ALJ and a direct appeal to the Ninth Circuit*.")

(Emphasis added).

The obvious question, then, is whether Plaintiff made such an administrative claim and

the record shows that, on October 7, 2014, Plaintiff did bring an administrative claim under AIR-

21. *See* Ex. F to Phillips Decl. (Docket No. 46, Att. 3). After an investigation, the Secretary of

Labor denied Plaintiff's claim, concluding that Defendants did not violate AIR-21. *See* Ex. C to

Phillips Decl. (Docket No. 46, Att. 3) ("Complainant's allegations did not make a prima facie

showing. . . . Although Complainant raised safety concerns related to the repositioning of this

aircraft, the evidence demonstrated that Complainant's objection was not done in good faith, and

that at the time of his objection he lacked a reasonable belief that a legitimate air safety concern

prevented him from complying with his management's instructions."). On August 17, 2016,

Plaintiff requested to have a de novo hearing before an Administrative Law Judge ("ALJ"). *See*

Ex. D to Phillips Decl. (Docket No. 46, Att. 3). The hearing was originally scheduled to take

place in March 2017, with the parties confirming during oral argument in the instant action that

they had "gone completely through a full de novo hearing before an ALJ in late July," that they

had fully briefed closing arguments, and were awaiting a decision. As of the date of the hearing

on this Motion, no decision has been issued, and the Court has received no indication from either

party since the date of the hearing that there has been any further action in the administrative

proceeding.

Even though Plaintiff's administrative action remains pending (and, therefore, his

ultimate relief or denial of the same, remains uncertain), his election to pursue such relief

precludes his wrongful termination claim here to the extent that the claim is premised upon his

allegation that he was fired for raising safety concerns. *See Murray v. Alaska Airlines, Inc.*, 237

P.3d 565 (Cal. 2010) (upon certified question for Ninth Circuit, concluding that collateral

estoppel precluded plaintiff from challenging Secretary's final decision in wrongful termination

proceedings where plaintiff did not seek de novo hearing before ALJ after receiving adverse

factual finding and decision based upon Secretary's preliminary investigation). As mentioned

above, the Court is mindful that there is not yet a resolution of that claim, as a decision from the

ALJ has not yet been issued. *See* Opp. to MSJ, p. 17, n.7 (Docket No. 60). Nevertheless, it

makes little sense to apply collateral estoppel to a litigant who does not request a de novo

hearing, as in *Murray*, while simultaneously allowing a litigant to request a de novo hearing so

that he may then proceed with a claim in a court of law while awaiting the ALJ's decision and,

thus, violate AIR-21. The holding is *Murray* did not address the latter circumstance, and cannot

reasonably be read so narrowly as to permit such a result; in fact, the opposite is more likely the

case. With this in mind, Defendants' Motion for Summary Judgment is granted in this respect.

### ii. Wage Concerns

In addition to safety concerns, Plaintiff claims that he "protested the change of wages and

working conditions he encountered after he began working for Defendants" and that he

"continued to object to this unilateral change in terms, right up until the day he was fired."

Compl., ¶ 6.2 (Docket No. 1, Att. 1). Defendants submit that, even if Plaintiff "can identify a

public policy in Idaho that supports this type of wrongful termination claim,"[7] it nonetheless

"should be dismissed based on the doctrine of judicial estoppel." Mem. in Supp. of MSJ, p. 19

(Docket No. 46, Att. 2). Citing to Plaintiff's October 7, 2014 administrative claim which states in

summary fashion that he "was terminated for raising flight safety concerns," Defendants argue

that Plaintiff cannot allege here that he was fired for a different reason – that is, that he was

terminated for complaining about unpaid wages and working conditions when he contended in

the administrative proceeding that he was terminated for raising flight safety concerns. *See*

Mem. in Supp. of MSJ, p. 19 (Docket No. 46, Att. 2) (citing Ex. F to Phillips Decl. (Docket No.

46, Att. 3)). The Court disagrees.

Defendants' argument is bare of supporting authority for use of the judicial estoppel

doctrine to such a situation, and the Court has found none. That is not surprising, as the judicial

estopped doctrine is not intended for application here. An administrative claim is not mandatory

under AIR-21 in the first instance (*see supra*); hence, to preclude a basis for a claim because it

was *not* so alleged in an administrative proceeding misses the point. To reiterate, claims already

raised and considered in that setting are indeed precluded here (*see supra*); but claims not raised

and, thus, not considered in that setting – such as Plaintiff's wrongful termination claim based on

---

[7] Plaintiff points out that "Idaho's wage act forbids retaliation for wage demands". *See* Opp. to MSJ, pp. 14-15 (Docket No. 60) (citing I.C. § 45-613). Under Idaho Code § 45-613:

> No employer shall discharge or in any other manner retaliate against any employee because that employee has made a complaint to the employer . . . alleging that the employee has not been paid in accordance with the provisions of this chapter.

I.C. § 45-613.

his allegation that he was retaliating against for his wage demands – are not impacted. Defendants' Motion for Summary Judgment is denied in this respect.[8]

### c.    *Plaintiff's Breach of Contract Claim (Third Cause of Action)*

Plaintiff lastly alleges that (1) "Defendants promised [him] an hourly wage, benefits at a level equal to other pilots on LFN payroll, pay differentials, and other fringe benefits at the time of hire," (2) he "agreed to work for Defendants at Lewiston, Idaho base, traveling each week from Friday Harbor, Washington for work," and (3) "Defendants broke their promise to [him] regarding pay and fringe benefits and [he] was harmed as a result."  Compl., ¶¶ 7.1-7.3 (Docket No. 1, Att. 1).  Defendants argue that this claim, like Plaintiff's wage claim, is untimely under Idaho Code § 45-614.  *See* Mem. in Supp. of MSJ, p. 20 (Docket No. 46, Att. 2).  Plaintiff disagrees, arguing that, because his efforts to recover overtime wages are tied to his breach of contract claim, the general limitations period for breach of contract claims applies.  *See* Opp. to MSJ, pp. 19-20 (Docket No. 60) ("Because the Idaho Wage Act does not provide for collection of overtime compensation, the only way to collect on such promise is by suing for breach of contract.  Thus, Kreb's contract claim to enforce his right to overtime compensation survives the shortened Idaho Wage Claim limitations period.").

As described earlier, Plaintiff's Complaint specifically seeks "additional" wages via several measures of compensation, including overtime.  *See supra*.  Accordingly, the six-month limitations period prescribed within Idaho Code § 45-514 applies not only to Plaintiff's wage claim (first cause of action), but also to his breach of contract claim (third cause of action).  *See*

---

[8] Interestingly, Plaintiff argues that he has consistently asserted Defendants' "mixed motives" and that "[s]ubsequent amendments and submissions to OSHA clarified and expanded upon [his] initial complaint."  Opp. to MSJ, pp. 18-19, n.8 (Docket No. 60).  If so, and if the ALJ rules that Plaintiff's claim includes this further basis for a wrongful termination claim, Plaintiff would then be faced with the potential issue of AIR-21's preclusive impact, as discussed above.

*Wood v. Kinetic Sys., Inc.*, 766 F. Supp. 2d 1080, 1085 (D. Idaho 2011) (granting defendant's motion for summary judgment, dismissing plaintiff's wage claim and breach of contract claim for payment of overtime and double time, as well as additional accrued vacation pay, as untimely under Idaho Code § 45-614) (citing *Johnson*, 679 P.2d at 644; *Callenders, Inc. v. Beckman*, 814 P.2d 429, 434 (Idaho Ct. App. 1991)). Defendants' Motion for Summary Judgment is therefore granted in this respect.

**B.      Plaintiff's Motion for Leave to File First Amended Complaint (Docket No. 62)**

Plaintiff seeks to amend his Complaint to add a cause of action under the FLSA for retaliation. *See* Mot. to Am. (Docket No. 62). Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule's liberal amendment policy contributes to the over-arching policy of the Federal Rules of Civil Procedure "to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

The liberal amendment policy is not, however, an open-ended amendment policy. Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). These factors are not of equal weight. *See U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The most important factor is whether amendment would prejudice the opposing party. *See Howley v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973).

Defendants oppose Plaintiff's amendment efforts, arguing that it improperly seeks to avoid summary judgment, is untimely, and is futile. *See generally* Opp. to Mot. to Am., pp. 3-10 (Docket No. 69). As indicated during oral argument, the Court is focused only on Defendants'

futility argument, concluding at that time that the other bases for Defendants' opposition to Plaintiff's Motion to Amend do not apply.

On the issue of futility, Defendants argue at the outset that they are exempt from overtime pay requirements under FLSA. *See id*. at pp. 5-6 ("Because Kreb was an employee of a carrier by air subject to the provisions of the Railway Labor Act, he was not entitled to overtime pay under the FLSA. Therefore, the Jackson Defendants could not have violated the FLSA by failing to pay overtime . . . ."). Defendants then go on to argue that, as an exempt employer with no obligation to pay overtime in the first instance, a retaliation claim under the FLSA (which does not require proof of an actual FLSA violation) cannot stand. Defendants contend that without an underlying duty to pay, there necessarily can be no objective understanding that an employee like Plaintiff is asserting his statutory rights under the FLSA so as to support a retaliation claim under the Act. *See id*. at p. 6 ("Where the employer has no statutory obligation to pay overtime because it, rather than the employee, is exempt from such requirement, the employer cannot be put on notice that the employee is asserting a right under the statute based simply on a complaint about not being paid overtime.").

Plaintiff acknowledges that he may not be entitled to FLSA-mandated overtime time, but nonetheless argues that he remains protected by FLSA's anti-retaliation provision. *See* Reply in Supp. of Mot. to Am., p. 5, n.2 (Docket No. 70) ("[T]here is no exemption from FLSA anti-retaliation for an employer that may not have any obligation to pay overtime."). According to Plaintiff, so long as his wage complaint is in good faith and objectively reasonable (even if mistaken and Defendants' conduct is actually lawful), his FLSA retaliation claim is properly asserted. *See id*. at pp. 5-8.

At this juncture, upon the present record, the Court cannot conclude as a matter of law that Plaintiff is foreclosed from even making an FLSA retaliation claim because of Defendants'

claimed status as an exempt employer – the very nub of Defendants' futility argument. Although if correct, there is some inherent logic to that reasoning, but neither party has put before the Court any authority (binding or otherwise) directly apropos of what is a nuanced, complicated, and potentially lynchpin issue. Hence, the Court cannot say (as it must if it were to adopt Defendants' position and deny Plaintiff's Motion to Amend) that no set of facts exists to support such a claim or, said differently, that it appears such a claim would be dismissed as a matter of law for failure to state a claim. In other words, Defendants' arguments are premature and underdeveloped. If it is appropriate to later move for summary judgment on this point, with a more robust legal argument and, perhaps, with the benefit of discovery relative to the claim,[9] Defendants are free to do so. Until then, Plaintiff is permitted to proceed with an FLSA retaliation claim. Plaintiff's Motion for Leave to File Amended Complaint is therefore granted.

## III.  ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Jackson Defendants' Motion for Summary Judgment (Docket No. 46) is GRANTED, in part, and DENIED, in part, as follows:

        a.      Except for insurance benefits-related wage claims, Plaintiff's wage claim (first cause of action) is dismissed; in this respect, the Jackson Defendants' Motion for Summary Judgment (Docket No. 46) is GRANTED. To the extent Plaintiff has raised an insurance benefits-related wage claim, it is not dismissed; in this respect, the Jackson Defendants' Motion for Summary Judgement (Docket No. 46) is DENIED.

---

[9] As to any arguments surrounding Plaintiff's subjective good faith belief that he was entitled to overtime pay (and attendant objective reasonableness in putting employer on notice that Plaintiff was asserting statutory rights under the FLSA), questions of fact populate that inquiry at the moment, further auguring against ending Plaintiff's FLSA retaliation claim before it begins.

b. Plaintiff's wrongful discharge claim (second cause of action) premised upon safety concerns is dismissed; in this respect, the Jackson Defendants' Motion for Summary Judgment (Docket No. 46) is GRANTED. Plaintiff's wrongful discharge claim (second cause of action) premised upon wage concerns is not dismissed; in this respect, the Jackson Defendants' Motion for Summary Judgment (Docket No. 46) is DENED.

c. Plaintiff's breach of contract (third cause of action) is dismissed; in this respect, the Jackson Defendants' Motion for Summary Judgment (Docket No. 46) is GRANTED.

2. Plaintiff's Motion for Leave to File Amended Complaint (Docket No. 62) is GRANTED. Plaintiff shall file an Amended Complaint within 14 days of this Memorandum Decision and Order, removing therein the claims dismissed here. Defendants shall answer or otherwise respond to the anticipated Amended Complaint consistent with the Federal Rules of Civil Procedure and Local Civil Rules.

DATED: March 12, 2018

Ronald E. Bush
Chief U.S. Magistrate Judge